UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

FILED
U.S. DIST COURT
MIDDLE DIST. OF LA

2007 MAR 27 P 4: 00

SIGN
BY DEPUTY CLERK

THINKSTREAM, INC.

VERSUS　　　　　　　　　　　　　　　　　　CIVIL ACTION

BRIAN ANDERSON and　　　　　　　　　　　NO. 06-834-A
THE CITY OF DALLAS, TEXAS

# RULING ON
# MOTION TO DISMISS

This matter is before the court on a motion to dismiss pursuant to Fed. R. Civ. P. Rule 12(b) filed by the defendant, the City of Dallas, Texas (doc. 3).[1] Dallas seeks dismissal of the plaintiff's claims against it based on lack of subject matter jurisdiction, lack of personal jurisdiction, insufficiency of process and service of process, and failure to state a claim upon which relief can be granted. The plaintiff opposes the motion (doc. 14). Jurisdiction is alleged to exist pursuant to 28 U.S.C. §1332.[2]

---

[1] The motion is filed on behalf of the City of Dallas only. The defendant, Brian Anderson, has yet to make an appearance in this action. Apparently he has not been served.

[2] The plaintiff also alleges jurisdiction exists pursuant to 28 U.S.C. §1331. However, the plaintiff has not alleged any facts sufficient to support jurisdiction under §1331.

1

## BACKGROUND

The plaintiff alleges that some time in October of 2004 the plaintiff was contacted by the City of Dallas through its Director and Chief Information Officer of Communications and Information Services, Brian Anderson. Dallas was interested in contracting with the plaintiff to update an antiquated computer system and integrate the system with a call center used by the water utility. Thereafter, the plaintiff was engaged to produce a "pilot demonstration" program that would test the feasibility of the undertaking. By March 2005, the plaintiff had developed the pilot demonstration, and Anderson requested the plaintiff install the program and update the computer system. On May 11, 2005, the proposal was presented to city officials with success. Thereafter, both parties began efforts to update and integrate Dallas's computer system for the water utility. It appears that the integration was successfully completed in late June of 2005.

It is alleged that upon the completion of the initial project, the parties undertook an arrangement whereby the plaintiff would develop additional technological innovations and present those innovations to other city officials for possible implementation. Proposals were submitted to the Dallas Code Compliance Department and the Fire Department.

The plaintiff undertook efforts to develop these proposals and was scheduled to submit them to the Dallas City Council. However, soon after these developments, Brian Anderson was asked to take a leave of absence by the City of Dallas.

Subsequently all contact between the plaintiff and Dallas terminated. At Anderson's termination, Dallas's contact with the plaintiff became sporadic and the negotiations were all but terminated. The proposals were never submitted to the Dallas City Council.

In April 2006, the plaintiff was advised by Lynn Chaffin, Dallas's new project manager, to resubmit a proposal on the additional innovations. On June 27, 2006, Thinkstream submitted an updated proposal to the City of Dallas. However, Chaffin never contacted the plaintiff about a subsequent vote by the Dallas City Council. On October 27, 2006 Thinkstream filed suit seeking reimbursement of funds it expended in developing technology at the behest of several Dallas city officials (doc. 1). The plaintiff alleges claims of unjust enrichment, promissory estoppel and breach of contract against the City of Dallas.[3]

The defendant, City of Dallas, filed this motion alleging lack of subject matter and personal jurisdiction, insufficiency of process, insufficiency of service of process, and failure to state a claim upon which relief can be granted. The city argues that under Texas law, Dallas is immune from suit, and that there is an insufficiency of process because the plaintiff failed to comply with Texas law in effectuating service on Dallas.[4] Dallas also argues that it has insufficient contacts with the State of

---

[3] The plaintiff also alleges the intentional tort of fraudulent inducement. However it only does so with respect to Brian Anderson, not the city.

[4] The defects in service of process on the City of Dallas have now been cured (see doc. 29).

3

Louisiana such that a federal court in this state is unable to exercise personal jurisdiction over it. The plaintiff disputes whether Texas law applies to this action.

## DISCUSSION

The motion to dismiss alleges that the court lacks subject matter jurisdiction under 28 U.S.C. §1332. This is simply not so. The plaintiff is a Colorado Corporation with its principal place of business in Louisiana. The City of Dallas is a home rule municipal corporation of the State of Texas. "[I]t is well settled that for purposes of diversity of citizenship, political subdivisions are citizens of their respective states. *Moor v. Alameda County,* 411 U.S. 693, 718, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973) (quoting *Illinois v. City of Milwaukee,* 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972)). Thus it is clear that Dallas is a "citizen" of Texas. The other defendant, Anderson, is alleged to be a citizen of Texas. Thus, the complete diversity requirement of §1332 is met and the amount in controversy exceeds $75,000. There is federal subject matter jurisdiction.

A federal court exercising jurisdiction in diversity of citizenship cases (28 U.S.C. §1332) applies as its rule of decision the law of the forum state. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). When doing so, the federal court must apply the forum state's law as interpreted by the state's highest court. *American National General Insurance Co. v. Ryan,* 274 F.3d 319, 328 (5th Cir. 2001). Therefore, we apply the law of Louisiana to this action.

Because there is federal jurisdiction, Dallas has raised the issue of state sovereignty and immunity. Dallas contends that it is immune from suit, which is potentially so under Texas law. See: Tex. Gov't Code Ann. §101.021, *et seq.; GLF Construction Corp. v. LAN/STV,* 414 F.3d 553, 556 n. 3 (5th Cir. 2005).

The Louisiana Constitution waives sovereign immunity "from suit and liability in contract or for injury to person or property." La. Const., art. XII, § 10(A). The waiver is subject to limitations and procedural rules established by the Louisiana legislature. La. Const. art. XII § 10(C).[5]

The issue presented by this motion is not one involving the Eleventh Amendment which bars suits against states in federal court, because that shield does not extend to political subdivisions of the states. *Lee v. Miller County,* 800 F.2d 1372, at 1374 n. 3 (5th Cir. 1986). Thus, we turn to a discussion of the principle of comity.

"Comity is a principle under which the courts of one state give effect to the laws of another state or extend immunity to a sister sovereign not as a rule of law, but rather out of deference or respect." *Lee,* 800 F.2d 1372, at 1375 (5th Cir. 1986). The application of comity among sister states has been encouraged by the Supreme Court. *Nevada v. Hall,* 440 U.S. 410, 426, 99 S.Ct. 1182, 59 L.Ed.2d 416 (1979).

---

[5]The legislature has established such limitation and procedural rules. One is that, "No suit against the state or a state agency or political subdivision shall be instituted in any court other than a Louisiana court." La.R.S. 13:5106. Because of the result that the court ultimately reaches no view is expressed as to this state imposed limitation.

5

Louisiana courts will generally implement the comity principle unless: (1) "the foreign state declines to extend comity to Louisiana or sister states under the same or similar circumstances; or (2) the foreign law produces a result in violation of Louisiana's own legitimate public policy." *Levert v. University of Illinois,* 2002-2679 (La. App. 1st Cir. 2003), 857 So.2d 611, at 619. Courts extend immunity as a matter of comity to foster cooperation, promote harmony and to build goodwill among the states. Comity is a matter of discretion, not a right.

Texas is a sovereign that extends comity to Louisiana as well as other sister states. See: *Greenwell v. Davis,* 180 S.W.3d 287 (Tex. App.-Texarkana 2005) (applying Arkansas's law of governmental immunity to a Texas litigation involving an Arkansas city and city official and a Texas resident.); *Hawsey v. Louisiana Dept. Of Social Services,* 934 S.W.2d 723 (Tex. App.-Houston 1996) (Texas extended comity to Louisiana in Texas litigation involving Louisiana state agency and Texas resident).

The Texas Supreme Court has clearly held that in the interest of promoting cooperative federalism, a Texas court will recognize the law of another state as a matter of comity so long as the sister state's law does not conflict with the public policy of Texas. *McElreath v. McElreath,* 162 Tex. 190, 345 S.W.2d 722 (1961). In this case, maintaining Dallas's immunity would facilitate the needs of the interstate system as well as respect the justified expectation of the City of Dallas that it should be granted the same treatment in Louisiana's courts as Louisiana's political subdivisions are granted in Texas courts. See *Hawsey,* 934 S.W.2d 723 (Tex. App.-

6

Houston 1996). While Louisiana's waiver of immunity for political subdivisions is broader than that of Texas *Hawsey,* 934 S.W.2d at 727 (Tex. App.-Houston 1996), differences in the laws of the respective states do not lead to a conclusion that one state's law necessarily violates the other's public policy. *Levert,* 2002-2679 (La. App. 1st Cir. 2003), 857 So.2d at 621. The court finds that resolution of the case according to Texas's governmental immunity law does not produce a result violative of Louisiana's own legitimate public policy.

Although we have found no Louisiana Supreme Court case where a sister state requested that Louisiana decline jurisdiction based on comity, the court has extended comity to other states by recognizing and applying the laws of other states. *See, e.g., Succession of Fisher,* 235 La. 263, 103 So.2d 276 (1958); *Fisher v. Bullington,* 223 La. 368, 65 So.2d 880 (1953).

In the case of *Levert v. University of Illinois,* 2002-2679 (La. App. 1st Cir. 2003), 857 So.2d at 611,[6] the plaintiffs filed suit in Louisiana state court against the University of Illinois seeking production of football tickets. Ultimately the university filed an exception of lack of subject matter jurisdiction and an alternative motion to dismiss based sovereign immunity and comity. *Id.* 615. The argument under the motion was that the university was an arm of the state, and thus, under Illinois law,

---

[6]"In making an 'Erie guess' in a diversity case, [the] court will seek guidance by looking at the precedents established by intermediate state appellate courts...when the state supreme court has not spoken on an issue." *Primrose Operating Co. v. National American Ins. Co.,* 382 F.3d 546, at 566 (5th Cir. 2004) (internal quotations omitted).

could only be sued in an Illinois court. The Louisiana trial court granted the exception and ordered that the remaining claims be transferred to the Illinois Court of Claims. *Id.* 616. The plaintiffs appealed.[7]

The court of appeal vacated the judgment to the extent that the trial court granted the exception because it lacked subject matter jurisdiction and transferred the case. The court of appeal found that the trial court did have subject matter jurisdiction, and that the actual issue was whether comity indicated that the trial court should decline to exercise jurisdiction. *Id.* 618. Based on the factors mentioned above (i.e., equal grants of comity, and lack of policy violations) the court found that Louisiana and Illinois were "cooperative jurisdictions" to the extent that both states apply the principle of comity. *Id.* at 620. The court also found that the grant of comity to the university would not contravene any of "Louisiana's public or judicial policies." *Id.* 622. As a result the appellate court affirmed the trial court's refusal to exercise jurisdiction based on the principle of comity.

Having found that Texas and Louisiana are "cooperative jurisdictions" and that no Louisiana public or judicial policy would be violated if the court were to defer to the State of Texas, the appropriate decision for this court, sitting as a Louisiana court, is to decline to exercise jurisdiction based on the principle of comity.

---

[7]The case actually involved two consolidated cases that were treated separately by the appellate court because different issues were involved. *Levert,* 2002-2679 (La. App. 1st Cir. 2003), 857 So.2d at 616. For purposes of this ruling, the court will only discuss the appellate decision as it relates to the issues present here.

Case 3:06-cv-00834-JVP-DLD    Document 30    03/27/07    Page 8 of 9

For the foregoing reasons, the motion to dismiss filed by the defendant, The City of Dallas, Texas, (doc. 3) is hereby **GRANTED** and the claims of the plaintiff, Thinkstream, Inc., against The City of Dallas shall be **DISMISSED** on the grounds of sovereign immunity and comity.

Baton Rouge, Louisiana, March 27, 2007.

JOHN V. PARKER
UNITED STATES DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA